Argued July 19, reversed and remanded July 31, rehearing denied September 11, 1917.

## HICKEY v. COFFEY, County Clerk.

(166 Pac. 959.)

**Pleading—Code—General Denial—Scope.**

1. Amendment to Section 73, L. O. L. only permits a general denial, at election of defendant, to take place of former specific contradiction of material allegations of plaintiff's primary pleading, but does not enlarge original scope of the answer.

**Arrest—Property in Possession of Prisoner—Right of Possession.**

2. Clerk of court cannot, under Sections 1705–1713, L. O. L., providing for custody and disposal of stolen or embezzled property, retain possession of bank note, taken from person convicted of obtaining money on fraudulent checks, but his property, as against plaintiff claiming as convict's assignee, where it was deposited with clerk for use as evidence on criminal trial, and clerk holds it for defrauded merchants, but only if he connects himself with proceeding by such merchants whereby custody of note is secured by officer under legal writ.

[As to replevin against public officers, see note in 25 **Am. St. Rep.** 256.]

**Replevin—General Denial.**

3. In an action to recover bank note which plaintiff claimed was assigned to him by one accused of obtaining money by false pretenses, where only defenses pleaded were general denial and that money belonged to persons whom accused had defrauded, and undisputed evidence shows it belongs to accused, court erred in submitting to jury and admitting evidence on question whether assignment was made in good faith, since under a general denial only evidence tending directly to disprove plaintiff's title or right of possession is admissible, and defense that assignment was made in bad faith, and plaintiff's title therefore voidable, must be specifically pleaded.

From Multnomah: Robert G. Morrow, Judge.

Action in replevin by Oliver M. Hickey against John B. Coffey, as county clerk of Multnomah County, Oregon. From a judgment rendered upon a verdict in favor of defendant, plaintiff appeals. Reversed and remanded with directions.

Department 2. Statement by Mr. Justice Moore.

This action of claim and delivery was commenced in the District Court of Portland, Oregon. The com-

plaint alleges: (1) That the defendant John B. Coffey at all the times mentioned was and is the county clerk of Multnomah County, Oregon; (2) that about June 1, 1914, and for a long time prior thereto, the plaintiff, Oliver M. Hickey, was, ever since has been, and is the owner and entitled to the immediate possession of one United States bank note for $100, one gold certificate for $20, giving the serial number of each, and two United States gold coins of $5 each, stamped, respectively, in the years 1905 and 1906, of the aggregate value of $130; (3) that on April 9, 1915, and prior to the commencement of this action, the plaintiff demanded possession of such property from the defendant, who then refused to comply therewith, and ever since that time he unlawfully holds in that county all such property from the plaintiff, to his damage in the sum of $130.

The answer admits paragraph 1 of the complaint, denies generally paragraph 2 thereof, admits that the possession of such property was demanded and delivery thereof refused, but denies generally all other averments of paragraph 3 of the initiatory pleading. For a further defense it is alleged that the demanded property was taken from the possession of Paul Williams, *alias* Earl Carl, *alias* John R. Ainsley, upon his lawful arrest for the crime of obtaining money and property by false pretenses; that the money so secured was turned over to the defendant as county clerk to be held as evidence in an action pending in the Circuit Court of that county upon an indictment charging Williams, *alias* Carl, *alias* Ainsley, with the commission of that offense; that a plea of guilty as charged was interposed to the indictment and the defendant in that case, whose name is Paul Williams, was sentenced to imprisonment in the state penitentiary; that such per-

sonal property does not belong to Williams, but was obtained by him by means of fraudulent checks from various merchants in Portland, Oregon, for the crime against one of whom Williams was convicted and sentenced to imprisonment as stated; that such sum of money is being held for distribution among the lawful owners thereof, as may appear from proof to be submitted by them; and that neither Williams nor the plaintiff herein has any lawful title, ownership or right of possession in or to said personal property.

A reply put in issue the allegations of new matter in the answer, and the cause being tried resulted in a judgment for the defendant, from which the plaintiff appealed to the Circuit Court of that county, where the action was retried eventuating in a like judgment, from which the plaintiff appeals to this court.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. Frank E. Swope* and *Mr. Oliver M. Hickey,* with an oral argument by *Mr. Swope.*

For respondent there was a brief over the names of *Mr. Philip F. A. Boche, Messrs. Joseph & Haney* and *Mr. B. H. Goldstein,* with an oral argument by *Mr. Boche.*

Mr. Justice Moore delivered the opinion of the court.

The evidence shows that on March 24, 1914, an indictment was returned in Multnomah County, Oregon, against Earl Carl, *alias* John R. Ainsley, charging him with the crime of obtaining by false pretenses from the Meier & Frank Company, a corporation, money and property of the value of $25.50. The person so charged and his wife were arrested at Los Angeles,

85 Or.—25

California, by an officer, who took from them the money described in the complaint and brought them to Portland, Oregon, where they were placed in jail, and the money was deposited with the defendant as county clerk. The plaintiff is an attorney to whom was executed a writing which reads: .

"April 24, 1914.

"I, the undersigned, for and in consideration of services performed and to be performed by Oliver M. Hickey, for me and my wife, hereby assign, transfer and set over to said Oliver M. Hickey all my right, title and interest in and to the $130 now held by the clerk of the circuit court of the State of Oregon, as evidence in the case of the *State of Oregon* v. *Earl Carl,* whose true name is Paul Williams. I further certify that said money is my own money.

"(Signed)   Paul A. Williams,
"Detained as Earl Carl."

The plaintiff testified that he made a contract with Williams whereby the latter agreed to pay him for the services so to be rendered $200, but that only $66.25 had been received on account thereof. Copies of orders made by the trial court in the case of State of Oregon against Paul Williams were received in evidence showing the return to several merchants in Portland, Oregon, of various articles of wearing apparel which Williams had unlawfully obtained from them, and that by false pretenses he had also secured from merchants in that city, naming them, sums of money amounting to $231.49, on account of which no payment was made.

Williams was taken from the state penitentiary, where he was serving a term upon a conviction under the indictment mentioned in order that he might appear as a witness for the defendant at the trial of this cause, and referring to the $100 bill described in

the complaint he stated upon oath that he obtained it from a station agent in the depot at Seattle, Washington, by exchanging other money for it. This statement is not contradicted in any manner. On direct examination the following question was propounded:

"I will ask you point blank if the $130 was your money? You certified in there [the assignment] either at your own suggestion or at Hickey's suggestion that, 'I further certify that the said $130 is my own money.' Now, you told us why you put that in. In fact, was that certificate true? Was that statement true?"

The plaintiff's counsel then said:

"I object to that, if the court please, because the pleadings show that it was his own money."

The defendant's counsel continued:

"I will say to you here your statement does not necessarily—I don't want you to state anything that will further incriminate you, but you can state truthfully merely so the jury can know what was in your mind at the time you made the assignment."

The plaintiff's counsel then remarked:

"I object to that question on the ground it is incompetent, irrelevant, and immaterial, for the reason that the issues made by the pleadings show that the legal title to the money was in Mr. Williams."

The objection was overruled, and an exception allowed. Thereupon the defendant's counsel further inquired:

"What do you say to that?"

The witness answered:

"I considered it my money at that time."

Williams was further questioned by defendant's counsel as follows:

"Paul, what was the purpose of writing this order of assignment to Hickey?"

He replied:-

"The purpose was to secure the $130.

"Q. For whom?

"A. My own personal expenses. I had no money.

"Q. Exactly. Now, did you have any agreement with Hickey to pay $200 attorney's fees?

"A. Well, I don't exactly remember what kind of an agreement we may have had about what he was to receive as his fees.

"Q. Do you remember whether you had any definite agreement as to his fees?

"A. Yes, there was some agreement, and that assignment covered a part of it.

"Q. What was the agreement?

"A. I gave him to understand my mother and probably some of my wife's relatives would pay him. * *

"Q. What then do you say was the purpose of giving Hickey this assignment?

"A. To obtain the money from Andrew Vaughn principally.

"Q. That is the idea. What other reason did you have?

"A. I needed money. I had no money. I needed it for expenses, as I said before, and I realized I would have to pay attorney's fees. I thought I would probably need some money as expenses while I was laying in jail, and I didn't like to see Andrew Vaughn keep the money.

"Q. Furthermore, where did you get your money for expenses while you were in the county jail?

"A. I got that from Mr. Hickey.

"Q. He would advance you small sums occasionally, would he, at your request?

"A. Mr. Hickey did advance me several sums.

"Q. After getting this so-called assignment?

"A. I don't know exactly when all the advances were made. They were while I was in jail.

"Q. The assignment was given almost immediately after you were brought here, was it not?

"A. I should say about 8 or 10 days afterwards.

"Q. Now, I will ask you once more what the fact was about having any agreement with Hickey about paying any fixed sum as an attorney's fee?

"A. Well, I really don't remember any fixed sum, but it was understood, of course, he was to be paid."

When all the testimony had been received and the cause submitted, the following solicitation was made:

"The plaintiff at this time requests the court to instruct the jury to bring in a verdict for plaintiff for the property described as the $100 bill, for the reason that the uncontradicted evidence shows that the plaintiff is entitled to it; second, for the further reason the defendant has not pleaded any special property in it, nor has he connected himself with the title to the property."

This motion was denied and an exception allowed. An exception was also taken to a part of the court's charge to the jury, viz.:

"The plaintiff must satisfy you by weight of the evidence that the pieces of money described in the complaint were the property of Paul Williams at the time this assignment was made. He must also satisfy you by the weight of evidence that it was a genuine assignment, made in good faith, and intending to convey the title to him; that it must have gone to Mr. Hickey."

Here a juror inquired:

"For services?

"The Court: It must have been a genuine, real transfer of the money.

"A Juror: No matter what for?

"The Court: I don't care what it must have been for, but it must have been for Mr. Hickey, and not in trust, not to do something else with. It must have been a real transfer of the money, and Williams must have owned it. The presumption is when you find a man with some money that he owns it. Whether he

does in fact own it, that is a question of fact the jury will have to determine.''

In *Coos Bay R. R. etc. Co.* v. *Siglin,* 26 Or. 387 (38 Pac. 192), which was an action of replevin wherein the answer failed to allege that the demanded property was transferred in order to hinder, delay or defraud creditors of an assignor, it was held that such defense was unavailing unless pleaded and that a part of the court's charge to the contrary was erroneous. In reversing the judgment in that case Mr. Justice WOLVERTON says:

''The instructions of the court below to which exceptions were taken would seem to indicate that evidence was given tending to show that R. A. Graham had sold or transferred the property in dispute to the plaintiff for the purpose of cheating, wronging, and defrauding his creditors, in which purpose plaintiff participated, or at least was chargeable with knowledge thereof. Under the allegations of the complaint plaintiff is required to show title in himself, or a present right of possession. Any evidence which would tend directly to disprove his title or right of possession would be pertinent under the specific denials of the answer; and the question recurs whether the evidence assumed by the instructions to have been given tends to this end. Such evidence may impeach or overthrow plaintiff's title, but it cannot be said that it disproves it. In fact, if it be conceded that the plaintiff purchased the property directly from Graham, the effect of such evidence would be to show that it had title, and one absolutely good as against Graham. When the statute says that a sale or transfer of property made for the purpose of hindering, delaying, or defrauding creditors is void as to them, such a sale or transfer is, in legal contemplation, only voidable, and that at the instance of a creditor. As between the parties, the sale or transfer may be absolute and unimpeachable. Unless a creditor moves, the title stands, and is good against all the world; so that

there is a distinction between showing a want of title, and in impeaching or overthrowing it. * * Another element concurs to make this new matter, and that is the alleged fraud committed as against creditors. Usually fraud cannot be proven unless alleged by the pleadings, as it is a general and well established rule that fraud will not be presumed. The object of our code pleading is to give notice to the opposite party of the defense intended to be interposed. This case is an illustration in point."

1. The plaintiff's counsel, invoking the legal principle thus announced, maintains that errors were committed in receiving the testimony so objected to, and in giving the instruction to which an exception was taken. It is insisted by defendant's counsel that since the decision thus referred to was rendered the statute has been amended authorizing a general denial to put in issue all the allegations of a complaint, and this being so the testimony objected to was admissible and the instruction predicated thereon, and which is complained of, was proper. After that case was decided the statute was amended by inserting the words included in brackets as follows:

"The answer of the defendant shall contain:

"1. A [general or] specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief; [provided, however, that nothing can be proved under a general denial that could not be proved under a specific denial of the same allegation or allegations]. 2. A statement of any new matter constituting a defense or counter-claim, in ordinary and concise language, without repetition": Section 73, B. & C. Compilation; Section 73, L O. L.

It will thus be seen that the amendment has not enlarged the original scope of the answer, and only permits a general denial, at the election of a defendant,

to take the place of the former specific contradiction of the material allegations of the plaintiff's primary pleading. The defendant's counsel cites and relies upon decisions from the Supreme Courts of several states, the substance of which is stated in *Gila Valley etc. R. Co.* v. *Gila County,* 8 Ariz. 292, 294 (71 Pac. 913, 914), as follows:

"Where the code system of pleading prevails, the rule is almost universal that a general denial in a replevin case puts in issue every fact stated in the complaint necessary to sustain the plaintiff's cause of action."

The decision in the case of *Coos Bay R. R. etc. Co.* v. *Siglin,* 26 Or. 387 (38 Pac. 192), determines the question here involved. Nor is the conclusion there reached without support as will be seen from the textbooks and cases cited at page 393 of the opinion. To the same effect see Cobbey, Replev. (2 ed.), § 781.

If the defendant herein had offered proof tending to show that the money so deposited with him was held by virtue of some legal writ caused to be issued by Williams' creditors, against whom the plaintiff obtained no valid title by reason of a voidable transfer of the money, there might have been some reason for holding the general issue sufficient to let in such evidence: *Bailey* v. *Swain,* 45 Ohio St. 657 (16 N. E. 370).

2. Sections 1707-1713, L. O. L., provide for the custody and disposal of stolen or embezzled property. So far as disclosed by the testimony herein the $100 bill, the right to the possession of which is controverted, does not come within the keeping or distribution of such money. The Portland merchants from whom Williams fraudulently obtained money and goods are not named, nor is the value of such merchandise or the sums of money so secured from each stated in the answer. The sufficiency of the answer

was not challenged by reason thereof, and the orders made by the Circuit Court in the case of state against Williams supply the necessary information in these particulars. Those merchants were entitled to be reimbursed from any of Williams' property that was subject to execution. So far as the $100 bill is concerned they were mere creditors whose rights could be asserted and established only by some legal writ issued in actions instituted for that purpose whereby the custody of that sum of money was secured by an officer who could justify his acts under the process. If any such proceedings were had, the defendant herein does not connect himself, either by averment or proof, with any such creditor, and for that reason he is not entitled to retain the possession of the $100 bill: Cobbey, Replev. (2 ed.), § 786; Wells, Replev. (2 ed.), § 695. Without deciding the question, it will be assumed that the remainder of the money was unlawfully obtained by Williams from the Portland merchants whom he was enabled to defraud, and that under Sections 1707–1713, L. O. L., the defendant or his successor in office holds and should have custody of the sum of $30 until it has legally been distributed.

3. Errors were committed in refusing to direct a verdict in plaintiff's favor for the $100 bill, in receiving, over objection and exception, the testimony mentioned, and in giving the instruction the sufficiency of which was challenged. The judgment is, therefore, reversed and the cause remanded with direction to render judgment for the plaintiff that he is the owner of and entitled to the immediate possession of the $100 bill.

REVERSED AND REMANDED.

REHEARING DENIED.


MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE McCAMANT concur.